IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL SMITH, | ) | CASE NO. 1:14-cv-00584 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Cheryl Smith ("Plaintiff" or "Smith") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for social security disability benefits. Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 14. As explained more fully below, the Court **AFFIRMS** the Commissioner's decision.

### I. Procedural History

Smith protectively filed[1] an application for Supplemental Security Income ("SSI") on June 8, 2011.[2] Tr. 151-157, 173. She alleged a disability onset date of June 8, 2011, (Tr. 151, 173), and alleged disability due to high blood pressure, anxiety attacks, broken arm, gout, and hypertension (Tr. 61, 100, 108, 177). Smith's application was denied initially and upon reconsideration by the state agency. Tr. 100-106, 108-114. Thereafter, she requested an

---

[1] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 5/19/2015).

[2] This application was Smith's fifth application for social security benefits (Tr. 281), including an application for SSI benefits filed on July 29, 2010 (Tr. 47, 145-150), and denied on January 20, 2011 (Tr. 60).

1

administrative hearing. Tr. 115. On October 4, 2012, Administrative Law Judge Susan G. Giuffre ("ALJ") conducted an administrative hearing. Tr. 23-46.

In her November 16, 2012, decision, the ALJ determined that Smith had not been under a disability from June 8, 2011. Tr. 7-22. Smith requested review of the ALJ's decision by the Appeals Council. Tr. 5-6. On January 23, 2014, the Appeals Council denied Smith's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

## II. Evidence

**A.     Personal, educational and vocational evidence**

Smith was born in 1958. Tr. 28. She was 52 years old on June 8, 2011, the alleged disability onset date and 54 years old at the time of the hearing. Tr. 28. Smith was living with a friend. Tr. 33. She graduated high school and took cosmetology courses. Tr. 28-29. Smith was a hair stylist for many years (Tr. 29) and she reported owning two hair salons (Tr. 300). Smith indicated that she stopped working in January 2002 because she was incarcerated.[3] Tr. 177. She also indicated that, as of June 8, 2011, her medical conditions prevented her from working. Tr. 29, 177.

**B.     Medical evidence**

**1.     Treatment history**

In July 2003, Smith sought treatment at MetroHealth for the purpose of establishing a new patient relationship. Tr. 240-243. She complained of hypertension and depression/anxiety. Tr. 240. She reported that her depressive episodes lasted no more than a day or two but she felt tired and apathetic. Tr. 240. She denied thoughts of hurting herself or others. Tr. 240. Smith was prescribed Wellbutrin for her depression. Tr. 240.

---

[3] During her consultative evaluations, Smith indicated that, between 2001 and 2003, she was arrested and convicted for shoplifting and was sent to prison for six months and had also been sentenced for DUIs. Tr. 282, 299.

Smith was next seen at MetroHealth on February 9, 2004, for follow up. Tr. 231-233. She continued to report feeling depressed and did not feel that the Wellbutrin was helping her much. Tr. 231. She had no suicidal or homicidal ideations but was feeling anxious and not happy. Tr. 231. She was not feeling helpless or hopeless. Tr. 231. Smith's physician changed her medication from Wellbutrin to Zoloft. Tr. 232.

On October 27, 2004, Smith was again seen by medical providers at MetroHealth. Tr. 215-217. She complained of tiredness, depression, and anxiety. Tr. 215. She indicated that Zoloft was not helping. Tr. 215. Since Zoloft was not helping as treatment for her depression, her medication was changed to Paxil. Tr. 215, 217. Her physician felt that Paxil might also help Smith with her anxiety. Tr. 217. A psychiatric referral for advice on community counseling options was also made. Tr. 215, 217.

No further mental health treatment records beyond those summarized herein appear to be present in the record.

### 2. Medical opinion evidence

#### a. Consultative examining physicians/psychologists

Eulogio Sioson, M.D., CIME[4]

On November 15, 2010, Dr. Sioson conducted a one-time consultative evaluation.[5] Tr. 268-272. Smith's stated medical problems included hypertension, mental disorder, and neck/back/joint pains. Tr. 268. Smith reported having depression and high anxiety for about 10 years. Tr. 268. She had not been hospitalized for her mental impairments. Tr. 268. She had no suicidal thoughts or attempts. Tr. 268. Smith reported not socializing and staying at home. Tr.

---

[4] Dr. Sioson was a Certified Independent Medical Examiner. Tr. 268.

[5] Dr. Sioson's evaluation was conducted as part of Smith's earlier disability application which was denied. *See* FN 2 above.

3

268.  She also reported poor sleep, feeling tired all the time and feeling hopeless sometimes.  Tr. 268.  Her appetite was fair and her weight was stable.  Tr. 268.  She reported memory and concentration problems but no hallucinations.  Tr. 268.  Smith had been out of Zoloft for a few years.  Tr. 268.

Dr. Sioson observed that Smith was alert, coherent, and oriented.  Tr. 269.  Dr. Sioson also noted that Smith was cooperative and exhibited no abnormal behavior or appearance.  Tr. 269.  With respect to Smith's mental impairments, Dr. Sioson's impression was that Smith "was not emotionally labile and was able to maintain attention and concentration."  Tr. 269.

Herschel Pickholtz, ED.D., Psychologist

On August 5, 2011, Dr. Pickholtz conducted a consultative psychological evaluation.  Tr. 280-288.  Dr. Pickholtz's diagnoses included obsessive compulsive disorder, mild; depressive disorder, NOS, mild to moderate; and tendencies towards exaggeration and non-cooperation.  Tr. 286-287.  Dr. Pickholtz indicated that, due to exaggeration, it was difficult to assess Smith's GAF but opined that, based on Smith's presentation, description of symptomology, mental status evaluation, and description of daily activities, her overall GAF was a 55 at worst and, with medications, her GAF would improve.[6]  Tr. 287, 288.

Dr. Pickholtz offered his opinion regarding Smith's functional abilities in four areas.  Tr. 287-288.  With respect to Smith's abilities and limitations in understanding, remembering, and carrying out instructions, Dr. Pickholtz indicated that Smith's IQ could not be assessed reliably.  Tr. 287.  He indicated, however, that Smith's "capacities to understand and remember visual and

---

[6] GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*

auditory information and respond to the clinical interview suggest[ed] at least a borderline IQ." Tr. 287.  He further opined that Smith's "capacities to understand, remember, and carry out instructions [were] not preclusive of work."  Tr. 287.

With respect to Smith's abilities and limitations in maintaining attention and concentration and in maintaining persistence and pace to perform simple tasks and to perform multi-step tasks, Dr. Pickholtz opined that Smith's "levels of attention and concentration on the mental status evaluation were inconsistent with daily activities."  Tr. 287.  He opined that Smith's "levels of attention [were] not severely impaired."  Tr. 287.  Smith's "pace and persistence approximated the low average range [and] [h]er capacities to perform 1 to 3-step tasks fall no greater than the moderate range of impairment."  Tr. 287.  He noted that, "[w]ith future psychiatric treatment, these capacities should improve."  Tr. 287.

With respect to Smith's abilities and limitations in responding to supervision and coworkers in a work setting, Dr. Pickholtz indicated that Smith's "capacities to relate to coworkers and supervisors in the past were not impaired."  Tr. 287.  He opined that, "[w]ith motivation, her capacities to relate to coworkers and supervisors would not exceed the moderate range [and] [w]ith future psychiatric treatment, she would have little difficulty relating to others."  Tr. 287.

With respect to Smith's abilities and limitations in responding to work pressures in a work setting, Dr. Pickholtz opined that Smith's "capacities to handle the pressures of unskilled labor and low skilled labor fall no less than the moderate range [and] [w]ith psychiatric treatment, she should have little difficulty handling the pressures of unskilled or low skilled labor."  Tr. 287-288.  Dr. Pickholtz noted that, with medication, Smith had no difficulties working in prison.  Tr. 288.

5

B.T. Onamusi, M.D.

On September 8, 2011, Dr. Onamusi conducted a consultative evaluation regarding Smith's physical impairments. Tr. 294-296. In evaluating Smith, Dr. Onamusi observed that Smith was alert and oriented to time, place and person; her speech was fluent, articulate and coherent; her memory for long and short-term events was not impaired; her thought process was rational; she had no difficulty sustaining conversation; and her attention span was satisfactory. Tr. 295.

David V. House, Ph.D., Psychologist

On March 16, 2012, Dr. House conducted a consultative psychological evaluation. Tr. 298-303. Smith reported that the only treatment she had received for her mental impairments was while at Oriana House in 2003. Tr. 299. Dr. House's diagnoses included major depressive disorder, severe, recurrent without psychotic features and anxiety disorder, not otherwise specified. Tr. 302, 303. Dr. House also diagnosed polysubstance abuse in reported remission but noted that whether or not Smith was continuing to abuse alcohol was not clear and Smith seemed to minimize her use. Tr. 302, 303. Dr. House assessed a GAF of 42.[7] Tr. 303. As far as Smith's prognosis, Dr. House opined that Smith may do better with treatment. Tr. 303.

Dr. House offered his opinion regarding Smith's functional abilities in four areas. Tr. 302-303. With respect to Smith's abilities and limitations in understanding and remembering to carry out instructions, Dr. House opined that Smith demonstrated at least somewhat adequate long term memory with some variation and some apparent glossing over of some substance abuse issues. Tr. 302.

---

[7] A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.

With respect to Smith's abilities and limitations in maintaining attention and concentration and maintaining persistence and pace to perform simple tasks and to perform multi-step tasks, Dr. House opined that Smith's attention and concentration seemed significantly reduced.  Tr. 302.  Dr. House indicated that Smith was very tearful and subdued and her affect was blunted, which Dr. House opined would likely interrupt her ability to retain focus.  Tr. 302.

With respect to Smith's abilities and limitations in responding appropriately to supervision and coworkers in a work setting, Dr. House indicated that Smith was socially isolated.  Tr. 302.  Dr. House indicated that, in the past, Smith had owned two hair salons and worked in the cosmetology industry where she had to get along with customers and supervisors to be at least somewhat successful.  Tr. 302-303.  However, he opined that she was currently quite depressed and anxious and likely would have difficulties complying with the wishes of others.  Tr. 303.

With respect to Smith's abilities and limitations in appropriately responding to work pressures in a work setting, Dr. House indicated that Smith was already experiencing panic attacks with rather subdued and blunted affect.  Tr. 303.  Dr. House found that Smith's coping skills and emotional resources appeared quite low at the time and it was likely Smith would tolerate little increase in stress and pressure.  Tr. 303.  Also, Dr. House found that Smith would be highly dysfunctional and disruptive in a work environment.  Tr. 303.

      b.     **Reviewing physicians**

Caroline Lewin, Ph.D.

On August 26, 2011, state agency reviewing psychologist Caroline Lewin, Ph.D., completed a Psychiatric Review Technique (Tr. 67) and a Mental RFC Assessment (Tr. 69-72).  Dr. Lewin opined that Smith had mild restrictions in activities of daily living and moderate

difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. Tr. 67. There were no repeated episodes of decompensation of extended duration. Tr. 67.

In assessing Smith's RFC, Dr. Lewin rated Smith's abilities in four general categories: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Tr. 70-71. Within those four categories, Dr. Lewin rated Smith's abilities in 20 areas. Tr. 70-71. Dr. Lewin found no evidence of limitation or no significant limitation in 13 of the 20 areas. Tr. 70-71. Dr. Lewin rated Smith moderately limited in the 7 remaining areas, including (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) ability to accept instructions and respond appropriately to criticism from supervisors; (5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) ability to respond appropriately to changes in the work setting; and (7) ability to be aware of normal hazards and take appropriate precautions. Tr. 70-71.

Dr. Lewin provided narrative explanations for her assessments of Smith's abilities in each of the categories. Tr. 70-71. She also added:

> [Smith] retains the ability to cope with simple instructions in low stress setting without a lot of interaction with others. She has been a cosmotologist [sic] and she may not have the superficial social skills to resume this. But she is not getting into fights with the public, either. She is able to live with a friend. She could tolerate brief interactions with others. She can concentrate most of the time. She can perform simple tasks.

Tr. 71.

Leslie Rudy, Ph.D.

At the reconsideration level, on March 30, 2012, state agency reviewing physician Leslie Rudy, Ph.D., completed a Psychiatric Review Technique (Tr. 83) and a Mental RFC Assessment (Tr. 86-89). Dr. Rudy opined that Smith had mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. Tr. 83. There were no repeated episodes of decompensation of extended duration. Tr. 83.

In assessing Smith's RFC, Dr. Rudy rated Smith's abilities in four general categories: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Tr. 86-89. Within those four categories, Dr. Rudy rated Smith's abilities in 20 areas. Tr. 86-89. Dr. Rudy found no evidence of limitation or no significant limitation in 7 of the 20 areas. Tr. 86-89. Dr. Rudy rated Smith moderately limited in 11 areas, including (1) ability to remember locations and work-like procedures; (2) ability to carry out very short and simple instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) ability to interact appropriately with the general public; (7) ability to accept instructions and respond appropriately to criticism from supervisors; (8) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (10) ability to respond appropriately to changes in the work setting; and (11) ability to be aware of normal hazards and take appropriate precautions. Tr. 87-88. Dr. Rudy rated Smith markedly limited in 2 areas: (1) ability to

9

understand and remember detailed instructions; and (2) ability to carry out detailed instructions. Tr. 87.

Dr. Rudy provided narrative explanations for her assessments of Smith's abilities in each of the categories.  Tr. 87-88.

**C.    Testimonial evidence**

    **1.    Plaintiff's testimony**

Smith was represented by counsel and testified at the hearing.  Tr. 28-39.  In response to the ALJ's inquiry as to what limits her ability to work, Smith stated that it was her emotions, not her physical ailments.  Tr. 29, 30.  She indicated that she was unable to deal with people very well any more and was depressed.  Tr. 29.  Smith explained that she gets nervous around people, wants to be left alone, and does not want to be bothered.  Tr. 29-30.  She stated that medication had helped her with depression and anxiety in the past but she no longer had medical coverage.  Tr. 30-31, 37.  She lost her medical card around 2008.  Tr. 31.  Smith was not seeking medical treatment at any free clinics or MetroHealth.  Tr. 32.  She acknowledged that she should probably take steps in order to try to get treated but indicated that it was hard for her to do anything.  Tr. 32.  She indicated that she engages in obsessive compulsive behavior, explaining that she repeats things.  Tr. 36.  For example, if she touches something and it makes her feel weird, she has to continue touching it over and over or, if she turns a light switch off, she has to go back and do it again and again.  Tr. 36.

Depending on her mood, Smith sometimes helps with household chores.  Tr. 33.  She occasionally cooks for herself but she has a friend down the hall from her who cooks for her at times.  Tr. 33.  She occasionally goes grocery shopping but indicated that she does not have a big appetite.  Tr. 33-34.  Smith indicated that she has relatively no hobbies and does not do much

other than sleep or watch television. Tr. 34-35, 38. Provided she does not fall asleep, she is able to follow and understand a television program. Tr. 38. She showers maybe twice each week. Tr. 37.

    2.    **Vocational Expert's testimony**

Vocational Expert ("VE") Kathleen L. Reis testified at the hearing. Tr. 39-44, 116-118. The VE discussed and described Smith's past relevant work as a hair stylist. Tr. 40-41. The VE indicated that the position of hair stylist is classified as skilled work SVP $6^8$ and light. Tr. 41.

The ALJ asked the VE to assume an individual of Smith's age, education and past relevant work experience with the capacity to perform medium work but never able to climb ladders or scaffolds; would have to avoid exposure to hazards, defined as unprotected heights/ industrial machinery; with the capacity to understand and remember simple, repetitive tasks and the capacity to carry out simple, repetitive tasks in a setting without demands for fast pace; with the ability to interact on an occasional superficial basis with others; and with the capacity to adjust to occasional changes, with some supervising support. Tr. 42. The VE indicated that the described individual would not be able to perform Smith's past relevant work as a hair stylist because of the social factor but there were other jobs that the described individual could perform, including (1) industrial cleaner, a medium, unskilled job with at least 1.1 million jobs in the nation and at least 30,000 jobs in Ohio; (2) kitchen helper, a medium, unskilled job with at least 180,000 jobs in the nation and at least 7,000 jobs in Ohio; and (3) cook helper, a medium, unskilled job with at least 250,000 jobs in the nation and at least 8,000 jobs in Ohio. Tr. 42-43.

---

[8] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, *7-8 (Social Sec. Admin. December 4, 2000). Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. *Id.*

11

In response to questioning from Smith's counsel, the VE indicated that, if the individual described by the ALJ was also off task 20% of the time due to mental health symptoms, the jobs identified by the VE would not be available.[9] Tr. 44.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[10] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a

---

[9] Smith's counsel also asked the VE a question relating to alleged symptoms caused by gout. Tr. 43-44. As noted above, Smith only raises a challenge to the ALJ's consideration of her mental impairments.

[10] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

      listed impairment,[11] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also* *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

In her November 16, 2012, decision, the ALJ made the following findings:

1. Smith had not engaged in substantial gainful activity since June 8, 2011, the application date. Tr. 12.

2. Smith had the following severe impairments: hypertension, depression, anxiety disorders.[12] Tr. 12.

3. Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 12-13.

4. Smith had the RFC to perform a reduced range of medium work except she could never climb ladders or scaffolds; must avoid all exposure to hazards such as unprotected heights and industrial machinery; had the capacity to understand and remember simple, repetitive tasks; had the

---

[11] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925.

[12] Smith alleged gout but the ALJ found that it was not a medically determined impairment. Tr. 12.

          capacity to carry out simple, repetitive tasks in a setting without demands for fast pace; had the ability to interact with others on an occasional and superficial basis; and had the capacity to adjust to occasional changes with some supervisory support. Tr. 13-17.

5.     Smith was unable to perform past relevant work. Tr. 17.

6.     Smith was born in 1958 and was 52 years old, defined as an individual closely approaching advanced age, on the date the application was filed. Tr. 17.

7.     Smith had at least a high school education and was able to communicate in English. Tr. 17.

8.     Transferability of job skills was not material to the determination of disability. Tr. 17.

9.     Considering Smith's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Smith could perform, including industrial cleaner, kitchen helper, and cook helper. Tr. 17-18.

Based on the foregoing, the ALJ determined that Smith had not been under a disability since June 8, 2011, the date the application was filed. Tr. 18.

## V. Parties' Arguments

Smith argues that the ALJ's decision is not supported by substantial evidence because the ALJ gave insufficient weight to the opinion of consultative examining psychologist Dr. House and/or did not provide sufficient rationale for the weight assigned to Dr. House's opinion. Doc. 16, pp. 8-10. In response, the Commissioner argues that the ALJ properly considered the evidence, including the medical opinions, when assessing Smith's mental RFC and substantial evidence supports the ALJ's decision. Doc. 17, pp. 7-11.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

14

unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Smith's only challenge pertains to the ALJ's consideration of and weight assigned to the March 16, 2012, opinion of consultative examining psychologist Dr. House. Doc. 16, pp. 8-10. She argues that the ALJ unreasonably assigned "little weight" to Dr. House's opinion, did not properly consider the factors in 20 C.F.R. § 416.927(c) when assigning weight to Dr. House's opinion, and improperly relied upon the opinions of Dr. Pickholtz and Dr. Onamusi when determining what weight to assign to Dr. House's opinion. Doc. 16, pp. 8-10.

In considering and weighing the medical opinion evidence, the ALJ considered Dr. House's opinion, stating:

> The claimant saw David House, PhD, for another consultative examination on March 16, 2012. She reported having "not many" friends. When asked about her

15

> substance abuse, the claimant said that she had a few beers a week prior. Dr. House wrote that it was not clear if she was believable. On exam, she had adequate eye contact, grooming, and hygiene. She reported a terrible appetite. Her pace was slow and her persistence inconsistent. She refused to do serial 7's or 3's. She could recall four digits back and three digits forward, and only one out of three items after five minutes. When asked to interpret proverbs she could not. Dr. House diagnosed the claimant with major depressive disorder, anxiety disorder, and polysubstance abuse in reported remission. He assigned a Global Assessment of Function (GAF) score of 42 for serious symptoms, and opined that she would have difficulties relating to others, that she has significantly reduced concentration and attention, and that she would be highly dysfunctional and disruptive when exposed to work stress (exh. 9F). The undersigned gives this opinion little weight, as it is inconsistent with the opinion from Dr. Pickholtz, and the findings from Dr. Onamusi that the claimant could sustain attention and concentration.

Tr. 15-16.

The Regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant evidence" of record. 20 C.F.R. §§ 416.945(a); 20 C.F.R. § 416.946(c). It is the responsibility of the ALJ, not a physician, to assess a claimant's RFC. See 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir.2009). In assessing a claimant's RFC, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Id.*

As a one-time consulting psychologist, Dr. House did not have an ongoing treatment relationship with Smith and therefore his opinion was not entitled to deference or controlling weight under the treating physician rule. See *Kornecky v. Comm'r of Soc. Sec*, 167 Fed. Appx. 496, 508 (6th Cir. 2006); *Daniels v. Comm'r of Soc. Sec.,* 152 Fed. Appx. 485, 490 (6th Cir. 2005). It is the ALJ's responsibility to evaluate the opinion evidence using the factors set forth in 20 C.F.R. § 416.927 and to explain the weight assigned. See 20 C.F.R. § 416.927(e)(2). However, the ALJ is not obliged to include in his decision an exhaustive factor-by-factor

16

analysis of the factors.  *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

Although Dr. House was not a treating psychologist, consistent with the regulations, the ALJ's decision makes clear that the ALJ considered Dr. House's opinion and explained the weight assigned to that opinion.  A lack of factor-by-factor analysis is not a basis for reversal. *Francis*, 414 Fed. Appx. at 804.  Further, when assessing Smith's RFC, the ALJ considered the entirety of the record. Tr. 13-17.  Smith, however, claims that the ALJ improperly considered or relied upon the opinions and findings of Dr. Pickholtz and Dr. Onamusi when evaluating and assigning weight to Dr. House's opinion because they rendered their opinions and findings prior to Dr. House.  Doc. 16, p. 10.  While Dr. Pickholtz and Dr. Onamusi did evaluate Smith and render their findings and opinions before Dr. House did, Dr. Pickholtz and Dr. Onamusi's evaluations of Smith occurred during the relevant period, i.e., after the alleged onset date of June 8, 2011.[13]  Accordingly, Smith's claim that those opinions and findings were not relevant to the disability determination or that the ALJ improperly considered that evidence in weighing the medical opinion evidence is without merit.

Smith also takes issue with the ALJ's decision to assign "little weight" to Dr. House's opinion on the basis that it was inconsistent with Dr. Pickholtz's opinion (Doc. 16, p. 10) but, in making her argument, Smith does not contend that the ALJ erred in concluding that Dr. House's opinion was inconsistent with Dr. Pickholtz's opinion (Doc. 16, p. 10 (Plaintiff's brief) (acknowledging "an apparent inconsistency between the two reports")).  Instead, she argues that the inconsistency is explained by the fact that Smith's condition worsened after Dr. Pickholtz evaluated her.  Doc. 16, p. 10.  In support of her argument, Smith relies on a February 2012

---

[13] Smith alleged a disability onset date of June 8, 2011.  Tr. 151,173.  Dr. Pickholtz's evaluation of Smith occurred on August 5, 2011 (Tr. 280), and Dr. Onamusi's evaluation of Smith occurred on September 8, 2011 (Tr. 294).

17

report of contact by an employee of the Social Security Administration ("SSA") wherein an SSA employee communicated with Smith regarding her alleged worsening of her condition and scheduled Smith for another consultative examination. Doc. 16, p. 10, Tr. 81. Although a second consultative examination was scheduled, the impetus for that action was Smith's subjective report that her condition had worsened, not new medical evidence or new treatment records reflecting a worsening condition.[14] Further, Smith reported that her condition worsened around August 2011 and, when reporting that her condition had worsened, Smith reported no new physical or mental limitations resulting from her condition. Tr. 77, 199. As noted above, Dr. Pickholtz evaluated Smith in August 2011. Thus, Smith's claim that Dr. Pickholtz's opinion was not relevant evidence or that the ALJ improperly considered that opinion when determining the weight to assign to the medical opinion evidence, including Dr. House's opinion, is without merit.

Smith also challenges the ALJ's reliance upon Dr. Onamusi's findings, arguing that, because Dr. Onamusi conducted a physical evaluation, he was not qualified to render an opinion regarding Smith's mental health. Doc. 16, p. 10. While Dr. Onamusi conducted a physical evaluation, as part of his evaluation, among other physical examination findings, Dr. Onamusi indicated that there was "no difficulty sustaining conversation" and Smith's "[a]ttention span was satisfactory." Tr. 295. Although Dr. Onamusi's findings were made while he was conducting a physical examination, Smith has failed to demonstrate that Dr. Onamusi's findings were not relevant to the ALJ's assessment of her alleged mental impairments or that ALJ was precluded from considering this evidence when weighing the medical opinion evidence, including Dr. House's opinion.

---

[14] To the extent that Smith claims that she was unable to afford or obtain medical treatment, the ALJ considered those claims and found them not entirely credible (Tr. 16) and Smith has not challenged that assessment.

18

Smith has not demonstrated that the ALJ's consideration of and weight assigned to the opinion of Dr. House, a one-time consultative examining psychologist, was in error or not supported by substantial evidence.  Moreover, in addition to relying upon the opinion of Dr. Pickholtz and findings of Dr. Onamusi to support the RFC assessment, the ALJ considered, and gave "great weight" to, the opinion of Dr. Rudy, a state agency reviewing psychologist, who rendered her opinion on March 30, 2012, (Tr. 83, 86-89), *after* March 16, 2012, the date of Dr. House's opinion (Tr. 298-303).  Tr. 16, 17.  Consistent with Dr. Rudy's opinion (Tr. 87-88), the ALJ accounted for Smith's mental impairments in the RFC by limiting Smith as follows: she has the capacity to understand and remember simple, repetitive tasks; she has the capacity to carry out simple, repetitive tasks in a setting without demands for fast pace; she has the ability to interact with others on an occasional and superficial basis; and she has the capacity to adjust to occasional changes with some supervisory support (Tr. 13).   Smith makes no claim that the ALJ improperly weighed or relied upon Dr. Rudy's opinion in assessing her RFC or that Dr. Rudy's opinion does not support the ALJ's RFC assessment.

Also, in assessing Smith's RFC, the ALJ found Smith's allegations of debilitating depression not credible and Smith does not challenge that assessment. Tr. 16-17.  In explaining her credibility assessment, among other issues, the ALJ noted that Smith had provided inconsistent explanation for why she left her prior work in the cosmetology industry, stating that:

> After [her] conviction [in 2002], she lost her cosmetology license and her salon, and did not give a psychiatric reasons for leaving her work.  (exh. 7F pp4-5) However, she told Dr. Sioson that she has not worked since 2000 due to her medical problems.  (exh. 4F p1)  She told Dr. Onamusi that she lost interest in her work and had difficulty getting along with others.  (exh. 8F p7) Finallly, she told Dr. House that she stopped working because her mom dies, and then she got into trouble.  (exh. 9F p4)  These conflicting reports further detract from her credibility.

Tr. 16-17

19

Based on the foregoing, the Court finds that Smith's claim that the ALJ improperly assigned "little weight" to Dr. House's opinion and/or that the RFC assessment or disability determination[15] are not supported by substantial evidence is without merit.

### VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.

Dated: May 19, 2015

Kathleen B. Burke
United States Magistrate Judge

---

[15] The VE testimony upon which the ALJ relied was provided in response to a hypothetical question that accurately portrayed the limitations accepted by the ALJ as credible and contained in the RFC.  Thus, the ALJ's reliance upon the VE testimony was proper and constitutes substantial evidence to support the finding of no disability.  *See Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) and *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).